UNITED STATES *v.* FREESE Co. (No. 993).[1]

COUNTERVAILING DUTY—EX PARTE AFFIDAVIT.

An *ex parte* affidavit was improperly admitted in evidence when it is shown that it had been made without notice to the other party and without the other party having had an opportunity in a proper proceeding to test by cross-examination the truth of the statements contained in the affidavit.—*United States v. Hoffman* (1 Ct. Cust. Appls., 276; T. D. 31319); *Strakosh v. United States* (*ib.*, 360; T. D. 31453); *Acker v. United States* (*ib.*, 404; T. D. 31481).

## United States Court of Customs Appeals, May 26, 1913.

APPEAL from Board of United States General Appraisers, Abstract 29162 (T. D. 32681).

[Reversed.]

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel; *Leland N. Wood*, assistant attorney, on the brief), for the United States.
*Comstock & Washburn* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Three hundred and ninety bales of unbleached chemical wood pulp, weighing 172,375 pounds, were assessed for duty by the collector of customs at the port of New York at one-sixth of 1 cent per pound. In addition the merchandise was subjected to the countervailing duty of $0.000375 per pound, applicable to chemical wood pulp and to wood used in the production thereof when imported directly or indirectly from Finland. The regular duty and countervailing duty assessed on the importation were imposed by virtue of the provisions of paragraph 406 of the tariff act of 1909, which paragraph, in so far as it is pertinent to the question here involved, reads as follows:

406. * * * Chemical wood pulp, unbleached, one-sixth of one cent per pound, dry weight; * * *: *Provided*, That if any country, dependency, province, or other subdivision of government shall impose an export duty, or other export charge of any kind whatsoever, either directly or indirectly (whether in the form of additional charge or license fee or otherwise) upon printing paper, chemical wood pulp, or wood for use in the manufacture of wood pulp, the amount of such export duty, or other export charge, shall be added as an additional duty to the duties herein imposed upon chemical wood pulp when imported directly or indirectly from such country, dependency, province, or other subdivision of government.

No objection was taken by the importer to the classification of the goods or to the regular duty assessed. It was claimed by the protest, however, that the wood pulp was not subject to the countervailing duty exacted, first, because the wood used in its manufacture was cut within certain named districts of Sweden which by royal ordinance imposed no export duty, and, second, because the country, dependency, or province or other subdivision of government from

---

[1] Reported in T. D. 33488 (24 Treas. Dec., 889).

which the merchandise was imported required the payment of no export duty, export license fee, or other export charge on chemical wood pulp or wood for use in the manufacture of wood pulp.

The Board of General Appraisers found as a fact that the merchandise was manufactured in Germany and Russia and that none of the wood from which the unbleached wood pulp was made was produced in Finland. As Finland was, at the time of the importation, the only country in Europe levying export charges on wood pulp and pulp wood, the board sustained the protest and the Government appealed.

On the hearing before the board no evidence was offered by the importers in aid of their protest save and except the following affidavit:

I hereby certify that the pulp covered by consular invoice No. 4790 for shipment of three hundred ninety (390) bales chemical wood pulp of the value de Mks. 11878, 65 shipped on the 18th of July, 1910, from Konigsberg i/Pr. via Hamburg to New York, was manufactured in Germany from wood cut in Germany and Russia and that none of the wood from which this shipment of pulp was manufactured, had been produced from Finland.

Hamburg, this first day of April, 1912. Ppa. Alfred Geisendorfer. Per Zeinor Geisendorfer.

Subscribed and sworn to before me this first day of April, 1912. E. —— ——, U. S. Vice Consul General.

(Seal.) (Fee stamp canceled.)

To the introduction in evidence of this document counsel for the Government objected on the ground that it was hearsay, incompetent, and not the best evidence of the facts sought to be proven thereby. The board overruled the objection and the Government having excepted now assigns the ruling as error.

We think that the objection of the Government to this affidavit was well taken and should have been sustained. So far as the record discloses the affidavit was made without previous notice to the Government and was called to its attention for the first time on the day the hearing was had, 11 days after the affidavit was subscribed by the affiant and some 19 months after the importation was entered at the customhouse. Under the circumstances the affidavit must be regarded as a declaration which could not be subjected to the test of cross-examination and which was therefore purely ex parte. It is very desirable of course that the importer should secure psosession of his goods and the Government the payment of the lawful duties thereon with as little delay and vexatious technical hindrances as a proper administration of customs laws may permit. That does not mean, however, that the legality of the duties exacted is to be determined by judicial or quasi-judicial proceedings without regard to those rules of evidence which centuries of experience have finally confirmed as the safeguards of truth. Most witnesses tell the truth as

they see it, but the trouble is that not infrequently the truth as they see it is not the whole truth, or it is seen at second hand, or if it is not distorted by prejudice it is colored by interest. Consequently fair protection to the rights of litigants demands that opposing witnesses shall be put to the proof not only as to their good faith, but as to the correctness and the sources of their knowledge.

The affidavit recites that the wood pulp was made in Germany from wood cut in Germany and Russia and that none of the wood used in the manufacture of the pulp was produced in Finland. Whether the affiant knew these things of his own knowledge and whether his sworn statement was supported by anything stronger than the unsworn statement of others were matters which affected so materially the value of affiant's declaration that inquiry as to them could not be cut off without depriving the Government of one of its substantial rights as a party litigant. In view of the fact that the affidavit averred that the wood used to make the pulp was cut in Germany and Russia and flatly contradicted the protest, which alleged that the wood was cut in Sweden, the opportunity to cross-examine the affiant was particularly valuable, and his untested declaration should not have been admitted in evidence against the objection of the Government, especially as the importer might have given full opportunity for cross-examination by taking the deposition instead of the affidavit of Geisendorfer. United States *v.* Hoffman (1 Ct. Cust. Appls., 276; T. D. 31319). Of course it is within the power of the legislature to make an affidavit evidence of the facts which it recites, but in the absence of any statutory declaration to that effect no *ex parte* statement, even if it be under oath, can, against objection, be received as evidence on the trial of the main issue between parties litigant.

The rule which obtains in courts of general jurisdiction that under objection *ex parte* declarations are inadmissible as evidence is applicable to tribunals the jurisdiction of which is limited to the trial of customs cases and the interpretation of customs laws. Strakosh *v.* United States (1 Ct. Cust. Appls., 360; T. D. 31453); Acker *v.* United States (*ib.*, 404; T. D. 31481); United States *v.* Motor Car Equipment Co. (3 Ct. Cust. Appls., 77; T. D. 32355).

It is suggested that as the affidavit was actually admitted by the board it is made competent evidence by subsection 29 of section 28 of the present tariff act. This question was considered at length in United States *v.* National Aniline & Chemical Co. (3 Ct. Cust. Appls., 10; T. D. 32287). As a result of such consideration we held that although all evidence received by the board becomes a part of and remains a part of the record in this court and is not to be stricken from the record, nevertheless this court is authorized to review the

ruling of the board admitting any item of testimony and to exclude it from our consideration when it is found by us incompetent or irrelevant.

Had the sworn statement of Zeinor Geisendorfer been attached to or stamped upon the invoice as required by the Treasury Regulations, its relation to the case would not have been that now presented. In such an event, in conformity with the prescription of competent authority, the collector having before him nothing to the contrary would have been bound to accept the affidavit as *prima facie* evidence of that which it recited. As the affidavit was not stamped upon or attached to the invoice as prescribed by the Treasury Department, no intendments obtain in its favor and it must be denied the evidentiary value which might have been accorded to it had it been given the status of an authorized document which the collector was bound to receive as *prima facie* evidence of the facts determinative of the duty to be assessed. As the affidavit was improperly admitted in evidence over the objection of the Government, and as the record contains no other evidence tending to support the claims of the protest, the finding of the Board of General Appraisers has nothing to sustain it, and the decision of the board is therefore *reversed* and a new trial ordered.