UNITED STATES *v.* WILFRED SCHADE & Co., (No. 3072)[1]

United States Court of Customs Appeals, November 19, 1928

*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham* and *Fred J. Carter,* special attorneys, of counsel), for the United States.

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* of counsel) for appellee.

[Oral argument October 9, 1928, by Mr. Carter and Mr. Richardson]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

Merchandise, described in the invoice as "cod liver oil cake meal" and bought and sold in the trade of the United States as "cod-liver oil-cake meal" and sometimes as "cod-liver meal" and "cod-liver oil meal," was assessed for duty by the collector at the port of Norfolk, Va., at 20 per centum ad valorem as a nonenumerated manufactured article under paragraph 1459 of the Tariff Act of 1922, which reads as follows:

PAR. 1459. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of

---

[1] T. D. 43092.

10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specifically provided for, a duty of 20 per centum ad valorem.

The provisions for free entry, under which the importer makes its alternative claims, read as follows:

PAR. 1575. Fish imported to be used for purposes other than human consumption.

PAR. 1629. Oil cake and oil-cake meal.

PAR. 1630. Oils, animal: Spermaceti, whale, and other fish oils of American fisheries, and all fish and other products of such fisheries and all cod and cod-liver oil.

On the trial in the court below, the parties entered into the following stipulation:

\*       \*       \*       \*       \*       \*       \*

II. That the *merchandise involved in this protest is the residue left after expressing cod-liver oil from cod livers.*

III. That *the cod livers are first steamed and the resultant oil drawn off. The remainder of the livers are again heated and the remaining oil expressed by pressure, the residue in the form of cakes is then ground, dried, and sifted into the condition as imported.* (Italics ours.)

\*       \*       \*       \*       \*       \*       \*

Thereupon, the importer attempted to prove that the merchandise was free of duty as "oil-cake meal" under paragraph 1629, by virtue of commercial designation.

The importer's witness, Charles R. King, testified, in so far as his testimony might be considered as relating to commercial designation, as follows:

Q. Are you familiar with the merchandise known as *oil cake* or *oil-cake meal?*— A. Yes.

Q. How long have you been familiar with it?—A. *Since 1915.*

Q. Now, speaking generally, Mr. King, will you state what are the characteristics of *oil-cake meal* as you know it in the trade?—A. *Oil-cake meal as designated by the trade are those articles in which the oil has been extracted, leaving a residue or meal which is ground and used as a feed product.*

Q. I show you the official sample in the case and I ask you if you are familiar with that merchandise?—A. Yes; I am quite familiar with that.

Q. When did you first see or become acquainted with that merchandise?— A. *Two years ago.*

Q. *That is about* 1924?—A. *Thereabouts.*

Q. Did your firm import it at that time?—A. We started to import it about that time.

Q. That is the first time you ever handled that?—A. Yes, sir.

Q. You said you had been familiar with the merchandise known as oil meal, or oil-cake meal since 1915?—A. Yes, sir.

Q. Prior to the passage of the Tariff Act of 1922, which was passed on September 21, 1922, do you know whether there was any merchandise of that same character as the merchandise shown in that exhibit in the United States?—A. I know there was not any.

Q. There was never?—A. There was nothing.

Q. How do you know?—A. I do know.

Q. Was there?—A. There was not.

Q. You are familiar with the merchandise known as linseed oil-cake meal?—A. Yes, sir.

Q. And merchandise known as soy bean oil-cake meal?—A. Yes, sir.

Q. And cottonseed oil-cake meal?—A. Yes, sir.

Q. Speaking generally, those are all residues after the express?—A. Yes, sir.

Q. Speaking generally, what are those commodities, what do those commodities consist of?—A. Well, they consist of the residue of meal after the oil has been extracted, either of the cottonseed, linseed, or soya bean. (Italics ours.)

It appears from his testimony that the merchandise is unfit for human consumption, that it is chiefly used as food for animals, and that it had no trade name as late as the year 1924.

With reference to its trade name in 1924, the witness said:

A. It was a new thing; we were the first people to import this particular product.

Justice ADAMSON. You are not prepared to state what the trade knew it as in 1924?

The WITNESS. At that time there was no particular trade on it. *We designated it as a residue of cod.* (Italics ours.)

He testified that there was only one manufacturer of the merchandise in the United States, that the Quaker Oats Co. contracted for and received the entire output of this manufacturer, and that the witness was employed as purchasing agent for the Quaker Oats Co.

He further testified as follows:

Q. Do you know whether this merchandise has become known by a uniform, general, and definite name?—A. Yes, sir.

\* \* \* \* \* \* \*

Q. *By what name is it known?*—A. *Cod-liver oil-cake meal.*

\* \* \* \* \* \* \*

By Justice YOUNG:

Q. Is it referred to as anything else in business, telegrams, or correspondence?—A. As *cod-liver meal occasionally, or cod-liver oil meal.*

Q. Cod-liver oil meal?—A. Cod-liver oil cake after they have extracted the oil.

Q. That is the form in which they sell it to you?—A. Yes, sir. (Italics ours.)

The witness identified illustrative Exhibit A as "fish meal." He said that it was composed of "menhaden fish," including heads, tails, skins, and bones; that it was known in the trade as "fish meal"; and that it was not like the involved merchandise, but was, in fact and in the trade, an entirely different commodity.

The importer's witness, Wilbert A. Edwards, testified that the merchandise represented by illustrative Exhibit A was known in the trade as "fish meal"; and that it was made by cooking, pressing, drying, and grinding "menhaden fish."

William B. Benkert testified for the importer. He said that, for the last two years, the involved merchandise, represented by Exhibit 1, had been known in the trade and commerce of the United States as "cod-liver oil-cake meal."

Upon this record the court below held that the merchandise was within the common understanding of the term "oil-cake meal," and,

accordingly, sustained the claim of the importer for free entry under paragraph 1629. The court held, however, that the importer had failed to prove commercial designation. In this connection the court said:

An attempt was made, by the introduction of testimony, to bring the merchandise involved herein, oil-cake meal, within the language of the statute by commercial designation. We do not think the testimony was sufficient to show by what designation the merchandise was bought and sold in the commerce of the United States. The testimony as far as it went showed that the meaning of the words in commerce was the same as the ordinary meaning. Such evidence as to commercial designation is, therefore, immaterial. *Maddock* v. *Magone*, 152 U. S. 368.

It is claimed by the Government that the court below was right in holding that the appellee had failed to prove commercial designation; that it was wrong in holding that the merchandise was within the common meaning of the term "oil-cake meal"; that the merchandise is not free of duty under any of the paragraphs suggested by counsel for the appellee; and that, as the merchandise has been manufactured from a residue or waste into the form of meal by grinding, drying, and sifting, and, as it is not specially provided for elsewhere in the Tariff Act, it is dutiable at 20 per centum ad valorem as a nonenumerated manufactured article under paragraph 1459, as assessed by the collector.

Counsel for the appellee contend that the merchandise is within the common meaning of the term "oil-cake meal"; but that, if it is not, it has been brought within the tariff meaning of that term by proof of commercial understanding. It is claimed, however, that, if the merchandise is not free of duty as "oil-cake meal" under paragraph 1629, it is free of duty as fish under paragraph 1575, or as "cod" under paragraph 1630; and that, if it is free of duty under either of the two last-mentioned paragraphs, the judgment of the court below must be affirmed.

We are informed by the witnesses for the appellee that merchandise like that involved had never been known in the commerce of the United States prior to the year 1924 and that during that year it was known "as a residue of cod."

The present Tariff Act was enacted in September, 1922. At the time of its enactment and as late as the year 1929 (an advance edition) the lexicographers understood that the term "oil-cake" referred to a "seed" residue, in the form of a cake or solid mass, from which the oil had been expressed, and which was used as a food for stock and also as fertilizer. This definition has not changed since the year 1909. The term "oil cake" is defined as follows:

The Oxford Dictionary (1909):

The cake or mass of compressed seeds (rapeseed, linseed, cottonseed, or other kind) which is left after pressing out so much of the oil as can be thus extracted; used as a fattening food for cattle or sheep, or as manure.

### The Century Dictionary and Cyclopedia (1913):

A cake or mass of compressed linseed, or rape, poppy, mustard, cotton, or other seeds, from which oil has been extracted. Linseed oil-cake is much used as a food for cattle. Rape oil-cake is used as a fattening food for sheep. These and other oil-cakes are also valuable as manures. Cotton-seed oil-cake is largely employed in and exported from the southern United States.

### Webster's New International Dictionary (1928):

A cake or solid mass composed of flaxseed, cottonseed, hempseed, rapeseed, etc., from which the oil has been expressed, used as food for stock or for manure.

### Funk & Wagnalls Practical Standard Dictionary (1929):

The mass of compressed seeds, etc., from which oil has been expressed.

The merchandise in question consists of "cod-liver oil cake," "ground, dried, and sifted" into the form of meal. There is no evidence of the common meaning of the term in the record, unless that which is referred to by counsel for appellee as proof of commercial designation may be so denominated. If this evidence is to be considered with reference to the common meaning, it is sufficient to say at this point that it is not impressive. It does not show that "oil-cake" meal is a generic term, embracing, as a species, "cod-liver oil-cake meal." The term "oil cake" is limited by the dictionary definitions to the residue of vegetable seeds from which the oil has been expressed. It is clearly evident that the Congress intended to limit the term "oil-cake meal" to meal made from "oil cake." In view of these facts, and, as there is nothing in the record to indicate that the dictionary definitions are incorrect, we are unable to concur in the conclusion reached by the court below in this regard. We may, therefore, consider the question of commercial designation.

The witness, King, was asked to give the trade understanding of the term "oil-cake meal." He said:

Oil-cake meal as designated by the trade are those articles in which the oil has been extracted, leaving a residue or meal which is ground and used as a feed product.

It will be observed that the witness did not state that the commercial understanding differed from the common meaning, nor did he give a definition from which it might fairly and reasonably be deduced that such was the case. His definition is not an accurate statement of the common meaning of the term, nor does it, either in terms or by necessary implication, extend the common meaning so as to include other than vegetable-seed residues, ground into the form of meal.

It is elementary, not only that the common and commercial meanings of tariff terms are presumed to be the same, but also that he who asserts that a tariff term has a meaning in the trade and commerce of the United States which is different from its common meaning has the burden of proof.

It is obvious that there is no evidence in this record tending to prove that the commercial understanding of the term "oil cake" is different from its common meaning. Nor is there any evidence to the effect that, in the trade and commerce of the United States, the term "oil-cake meal" includes the merchandise in question. The only evidence offered in support of such contention is that the merchandise in question is bought and sold as "cod-liver oil-cake meal." This does not conform to the character of proof required. Without intending to give a comprehensive definition of the rule, it may be said, however, that, if an article is not within the common meaning of a tariff term, in order to bring it within that term by proof of commercial designation, where such proof is limited, as it is here, to the trade term by which the article is bought and sold, it must be shown by a preponderance of the evidence that it was bought and sold or known in the trade and commerce of the United States, uniformly, definitely, and generally by the term contained in the statute. *United States* v. *Walter*, 4 Ct. Cust. Appls. 95, T. D. 33371; *Seligmann* v. *United States*, 6 Ct. Cust. Appls. 85, T. D. 35336; *Hampton, Jr. & Co.* v. *United States*, 12 Ct. Cust. Appls. 490, 496, T. D. 40695.

If, however, an article is within the common meaning of a tariff term, that is, if it is a species embraced by the generic tariff term, the mere fact that it was not known in the trade by the precise tariff term would not affect its classification. *United States* v. *Motor Car Equipment Co.*, 3 Ct. Cust. Appls. 77, T. D. 32355; *Witcombe, McGeachin & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 84, T. D. 40022, and cases cited therein; *United States* v. *Lilly & Co.* and *Parke, Davis & Co.*, 14 Ct. Cust. Appls. 332, T. D. 41970.

Accordingly, as the merchandise is not within the common meaning of the term "oil-cake meal," proof that it was bought and sold in the trade as "cod-liver oil-cake meal" does not bring it within the statutory term. We must hold, therefore, that the merchandise is not free of duty as "oil-cake meal" under paragraph 1629.

We may now give consideration to the remaining claims advanced by counsel for appellee.

It is contended that, if the merchandise is not free of duty under paragraph 1629, it is free of duty under paragraph 1575, which provides for "Fish imported to be used for purposes other than human consumption."

The merchandise is imported for purposes other than human consumption. If it is fish, it is undoubtedly free of duty under this paragraph. But we do not think that it is fish. In its original state it was liver, one of the organs of the codfish. Cod livers are first steamed and some of the oil drawn off. They are then heated and such oil as remains is expressed therefrom by pressure. The "residue" is in the form of cakes. Obviously, this "residue" is refuse

material, and, as such, a mere waste. It is known in the trade as "cod-liver oil cake." From this product the merchandise in question has been manufactured by grinding, drying, and sifting into the form of meal. It is an entirely different commercial entity, and has a new name, character, and use. It is known as "cod-liver oil-cake meal," and is chiefly used as chicken feed. It might be said in this connection that the appellee clearly proved that this merchandise is not "fish meal." In view of the fact that it is meal, it would not seem to be illogical to say that, if it is fish in any form, it is fish meal. However, from what has been said, it is evident that it is not fish, and is not classifiable as such.

The cases of *Brown & Co.* v. *United States*, 6 Ct. Cust. Appls. 415, T. D. 35977, and those therein referred to, have been cited by counsel in support of the contention that the involved merchandise is fish. It is, we think, sufficient to say that this case is so clearly distinguishable from those referred to as to make it unnecessary to prolong the discussion.

The last contention made by counsel for appellee is that the merchandise is free of duty as "all cod" under paragraph 1630. This contention is based upon the proposition that the provision was not intended to be restricted to codfish oils, but was intended to cover codfish in any form or condition.

It must be conceded that the merchandise is not codfish oil. The Government contends, however, that the provision for "all cod" was intended to be restricted to codfish oils. We find it unnecessary to consider the conflicting constructions placed upon the provision in question by the contending parties.

We have heretofore held that "cod-liver oil-cake meal" is not fish. Obviously, if it is not fish, it is not codfish.

We conclude that the merchandise is a nonenumerated manufactured article, and dutiable as such under paragraph 1459, as assessed by the collector.

The judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.