UNITED STATES *v.* SCHNEIDER BROS. & Co. (No. 2791)[1]

---

[1] T. D. 42131.

United States Court of Customs Appeals, April 4, 1927

*Charles D. Lawrence,* Assistant Attorney General (*John F. Kavanagh,* special attorney, of counsel), for the United States.

*Allan R. Brown* for appellee.

[Oral argument January 26, 1927, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD Associate Judges

SMITH, Judge, delivered the opinion of the court:

Articles of leather, felt, and metal, imported at the port of New York, were classified by the collector of customs as manufactures in chief value of leather and assessed for duty at 30 per centum ad valorem under that part of paragraph 1432 of the Tariff Act of 1922 which reads as follows:

1432. * * * manufactures of leather, * * * or of which leather, * * * is the component material of chief value, not specially provided for, 30 per centum ad valorem; * * *

The importer protested that the imported merchandise was dog harness and was therefore entitled to free entry under section 201 and paragraph 1606 of the free list, which section and paragraph in so far as pertinent read as follows:

SEC. 201. That on and after the day following the passage of this act, * * * the articles mentioned in the following paragraphs, when imported into the United States * * * shall be exempt from duty:

1606. Leather: All leather not specially provided for; harness, * * * finished or unfinished, and not specially provided for; * * *

The Board of General Appraisers sustained the protest and the Government appealed.

The merchandise in issue consists of a felt-lined strap, designed to be buckled around the body of a dog immediately to the rear of the front legs. The body strap passes through two loops of another felt-lined strap which goes around the chest of the dog. Two shorter felt-lined straps are riveted to the body strap and to the chest strap in such a way that, in place, they run over the right and left shoulders of the dog and meet at the top of the body strap. Affixed to the top of the body strap is a metal ring to which, when required, a lea strap may be attached. That the importation is in chief value of leather is not denied.

In order to entitle the goods imported to free entry under paragraph 1606, we must find that they are either harness as that term is commonly and ordinarily understood, or that they were at the time of the passage of the Tariff Act of 1922 definitely, uniformly, and generally known to the trade and bought and sold in wholesale quantities, as harness. *Maddock* v. *Magone,* 152 U. S. 368 at p. 371.

Harness, as used in paragraph 1606, commonly means the equipment put upon a draft animal in order that it may draw, move, or pull a vehicle, implement, or weight. Whether that equipment be put upon a horse, dog, goat, or any draft animal, it necessarily implies a device which is furnished, among other things, with traces, side straps, chains, or a means which will enable the animal to draw, drag, pull, or move the thing, the position of which is to be changed. See Harness, Traces—Standard Dictionary. The article which is here the subject of protest is equipped with no appliances or means whatever for moving, dragging, or drawing anything light or heavy and consequently can not be regarded as harness in the popular acceptance of the term.

We now come to the consideration of whether harness in trade and commerce has a different meaning and is used in a different sense from that given to it by people in general. The common meaning of tariff designations is presumed to be their commercial meaning, and the burden rested upon the importer in this case to overcome that presumption by competent proof.

The importer submitted the testimony of one witness for the purpose of proving that, in the trade, the meaning of the word "harness" differed from its common meaning and comprised goods of the kind here imported. That witness testified that his firm was in the business of buying and selling dog furnishings at wholesale and that he had been handling merchandise like that imported since 1921; *that of his own knowledge he did not know what merchants or buyers outside of New York called the article imported;* that harness was the only name applied to the merchandise of which he was aware and that he had known it by that name since and before September, 1922; that in New York, Philadelphia, and Jersey City the catalogues of manufacturers of dog furnishings and wholesale dealers in that class of merchandise designated it as harness or dog harness; that orders received by his firm for harness would be correctly filled by sending merchandise of the kind imported; *that the catalogue of his firm was published in 1923,* and that he did not know when the New York, Philadelphia, and Jersey City catalogues were published; that prior to 1922 his firm never issued any catalogue.

The catalogues to which the witness referred were offered but not admitted in evidence. The witness was an "inside man" and any information that he had as to the commercial designation of the goods under consideration was derived from a three years' knowledge of his firm's transactions and from catalogues of wholesalers in New York, Philadelphia, and Jersey City, and possibly from a single trip which he made to Detroit. Whether he came in contact with wholesale dealers and manufacturers in Detroit or there learned the name under which the goods in controversy were bought and sold in whole-

sale quantities is not disclosed by the record. The evidence introduced by the importer falls far short of establishing that the goods were definitely, uniformly, and generally known to the wholesale harness trade throughout the United States as "harness."

To establish commercial designation, testimony should have been introduced by the importer to show that the word "harness" had a meaning in the wholesale harness trade different from its common meaning and to prove the meaning assigned to that term by that trade. There is not a particle of testimony as to the meaning of the word "harness" in the trade or as to what was covered by the designation "harness" or included within that designation prior to the Tariff Act of 1922. What constituted the harness trade was not proven and the record discloses nothing showing or tending to show that that trade assigned to the word "harness" any signification other than that in which it is commonly used.

The evidence upon which the importer relies does not overcome the presumption of correctness attaching to the collector's decision and the judgment of the Board of General Appraisers, now the United States Customs Court, must be *reversed*.