Mikado Goldfish & Supply Co. et al. *v.* United States (No. 3370) [1]

[1] T. D. 44611.

United States Court of Customs and Patent Appeals, January 28, 1931

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Thomas J. McKenna* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument December 10, 1930, by Mr. Brown and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The importation at bar consists of what the appraiser reported as being "dog collars" and "dog harness." In this court the importer describes the merchandise as follows:

The merchandise in question is harness used for dogs of different kinds. It is not a collar but consists of a girth designed to be buckled about the body of the dog immediately to the rear of the front legs. The girth is held in place by straps which go around the chest of the dog and over the shoulders. The harness is used, as the record shows (R. 15, 19, 31), for guiding the animals and controlling their direction.

The merchandise was assessed for duty at 30 per centum ad valorem under that part of paragraph 1432, Tariff Act of 1922, which provides for "* * * manufactures of leather * * * or of which leather is the component material of chief value, not specially provided for." The importers protested the classification and claimed the merchandise to be free of duty under paragraph 1606 of the same act which is as follows:

PAR. 1606. Leather: All leather not specially provided for; *harness*, saddles, and saddlery, in sets or parts, except metal parts, finished or unfinished, and not specially provided for; leather cut into shoe uppers, vamps, soles, or other forms suitable for conversion into manufactured articles; and leather shoe laces, finished or unfinished. [Italics ours.]

The United States Customs Court overruled the protest and from its judgment importers have appealed.

Identical merchandise was before the lower court in Abstract 51906 which decision was reversed by this court in *United States* v. *Schneider Bros. & Co.*, 15 Ct. Cust. Appls. 16, T. D. 42131. We there held that the merchandise at bar was not included within the common meaning of the term "harness," and that the importer had not made proper proof of commercial designation. In the instant appeal the importers contend that they have offered ample proof that the term "harness" as used in the trade includes the merchandise at bar.

The importers introduced three witnesses, two of whom were familiar only with the trade which handled dog furnishings exclusively. Both witnesses testified that the merchandise in that trade was known as harness, but upon cross-examination disclosed that in the trade with which they were familiar the merchandise was referred to as "pug harness," "small dog harness," "bull dog harness," and like terms. The catalogues introduced also showed the merchandise referred to as "Boston bull terrier harness," "pug harness," etc.

It is pointed out by importers that when "pug harness," "bull dog harness" and such terms are used, it was only narrowing the term "harness" by describing a particular kind of harness. The Government, on the other hand, contends that the testimony of the witnesses referred to only goes to show that in that particular trade, when harness is referred to, it is referred to by a term other than the exact term of the statute.

The third witness for importers dealt in harness, saddlery, and leather goods. He testified that the dog furnishings at bar, in the trade with which he was familiar, were always known as "dog harness."

The Government presented two witnesses, one of whom was in the harness business handling "regular horse harness" and also the merchandise at bar, and who stated that the understanding of the wholesale trade in 1922 of the term "harness" was that it included only horse harness or such as is used for horse vehicles and pulling trucks, and that the merchandise at bar was known as "dog harness." The other witness for the Government, who was in the harness and saddlery-goods business, testified to substantially the same facts as the first Government witness, and in addition said that if anyone asked his firm for harness he would understand them to be referring to horse harness, although he handled and manufactured dog harness and goat harness.

In our view of the case, it makes no difference whether the evidence as a whole meets or fails to meet the requirements of proof of commercial designation. In this connection, however, it is interesting to consider the rule of this court laid down in the so-called cod-liver oil-cake meal case, *United States* v. *Wilfred Schade & Co.*, 16 Ct. Cust. Appls. 366, T. D. 43092; also the effect to be given proof of the trade meaning of a term when used in only a part of the trade, *United States* v. *H. Zuckerman Shoe Manufacturing Co. et al.*, 18 C. C. P. A. (Customs) 248, T. D. 44425, the shoe-buckle case. We are of the opinion that Congress, when it used the term "harness, saddles, and saddlery, in sets or parts, * * *" used that term in its common sense and not in any other sense sufficiently broad to include the dog furnishings in controversy.

In the Summary of Tariff Information, 1921, which was before Congress during the consideration and passage of the Tariff Act of

1922, much information concerning the free leather and leather goods paragraph under consideration was furnished as an aid to the legislature. In reference to "Harness leather," at page 1350, we find the following: "The industry has not grown as fast as many other branches in recent years, probably because of the automobile." (One of the importers' witnesses said "there is such a little harness sold for horses in comparison to dog harness.") Concerning "Harness, saddles, and saddlery, in sets or in parts," we find the following, page 1358:

Description and uses.—These products are principally stirrups, saddles and traces, wagon and carriage harness, horse collars, bridles, lines, and straps. The different varieties of harness may be roughly classified into light and heavy—the former driving and the latter work harness. Saddles also may be classified as light and heavy.

Production.—The manufacture of harness and saddlery is widely distributed throughout the country. * * * The increasing service of motor trucks and automobiles, perhaps, explains the arrest of the industry.

It is our opinion that the concern of the legislature in free listing harness did not involve a consideration of what effect the legislation might have on the price to the ultimate consumer of merchandise like that at bar.

Under the rule laid down in United States v. Stone & Downer Co., 16 Ct. Cust. Appls. 82, T. D. 42732, we conclude that the term "harness" in the free-list paragraph under consideration was used in its common sense, and it follows that the term as here used is not susceptible of proof of commercial designation for the purpose of controlling classification.

This court having held that the common meaning of the term does not include the merchandise at bar, it follows that the court below correctly overruled the protest and its judgment is affirmed.

CONCURRING OPINION

HATFIELD, J.: I concur in the conclusion reached by my associates, but am unable to agree that the Congress intended to limit the provision for "harness," in paragraph 1606 of the Tariff Act of 1922, to such harness only as is included within the common meaning of that term. In other words, it seems to me that the statutory term harness is subject to proof of commercial designation. I think it clearly appears from the record that appellants failed to establish commercial designation under the rules heretofore announced by this court. United States v. Wilfred Schade & Co., 16. Ct. Cust. Appls. 366, T. D. 43092; United States v. H. Zuckerman Shoe Manufacturing Co. et al., 18 C. C. P. A. (Customs) 248, T. D. 44425.