(C. D. 1003)

NEW YORK MERCHANDISE CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 13, 1946)

*Siegel & Mandell* (*Joshua M. Davidson* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Lawrence, Judge: The question submitted for our determination is whether so-called "kristal star lamps" are properly dutiable at the rate of 45 per centum ad valorem under the provision in paragraph 397 of the Tariff Act of 1930 for articles or wares not specially provided for, composed wholly or in chief value of metal, as classified by the collector; or, at the rate of 20 per centum ad valorem under the provision in paragraph 229 of said act for "incandescent electric-light bulbs and lamps"; or, alternatively, at the rate of 35 per centum ad valorem under paragraph 353 of said act as parts of articles having as an essential feature an electrical element or device, such as signs, as claimed by the plaintiff.

As disclosed by the record and by an examination of collective illustrative exhibit A herein, the imported articles, which are invoiced as "Tung. Kristal Star Lamps," consist of small 15-volt incandescent electric-light lamps, each encased in a metal housing having the form of a five-pointed star with tips of colored glass. The articles are used as Christmas tree decorations, and become illuminated when inserted into the sockets of the ordinary nine-outlet Christmas tree lighting set and connected with electric current. A sample of such a lighting set and of the incandescent electric-light bulb or lamp which forms part of the kristal star lamp represented by illustrative exhibit A, are in evidence herein as illustrative exhibits B and C, respectively.

Precisely similar kristal star lamps formed the subject of our decision in New York Merchandise Co., Inc. v. United States, 2 Cust. Ct. 275, C. D. 142, as evidenced by a comparison of the exhibits there and here involved. Also, it may be noted in passing that the plaintiff in each case is the same; and from a perusal of our decision it is at once apparent that the plaintiff there, as here, sought to establish, if possible, the soundness of the claim alleged under said paragraph 229 by relying upon the doctrine of commercial designation. To that end, three trade witnesses submitted testimony with a view to proving that the term "incandescent electric-light lamp" had a meaning in the commerce of this country different from its common understanding. However, in our decision, after detailing somewhat at length the evidence so offered, we concluded that the proof failed to accomplish the desired result.

Of the four witnesses called herein, two had testified in the previous case; and of the remaining two, one "disqualified himself as not familiar with the trade in or about 1930," as admitted by plaintiff in his brief.

The first witness herein was John F. Steeves. His testimony on commercial designation is not very persuasive, particularly since it does not satisfactorily appear that he had either bought or sold

articles like illustrative exhibit A at wholesale on or prior to the date of the enactment of the Tariff Act of 1930.

Abraham Abramson was next called to give his understanding of the term "incandescent electric-light lamp" as it existed "on or about. June 17, 1930, in the wholesale trade and commerce of the United States."

He replied:

There are various types of incandescent lamps. There are house lamps, automobile lamps; there are decorative lamps used for Christmas tree lighting purposes. Ordinarily, a house lamp would consist of a base, a glass balloon, a filament, and lead-in wires from the filament to the bottom of the base and the side of the base. Now, bases come various types, screw bases of all sizes, and there are bayonet bases, bayonet bases being used in automobiles primarily in this country. In the Christmas tree outfit business we use three different types of bases: miniatures, such as this, candelabra base lamp and an intermediate base lamp. We have different kinds of lamps, different kinds of fancy lamps in the Christmas tree industry. Some consist of the balloon themselves, and others are surrounded by other materials but they are still considered, in our particular trade, as an incandescent lamp.

We quote the witness further:

Q. So that you would say that your understanding of the term "incandescent electric light lamp" in the trade in June, 1930, was the base, a filament, a globe and certain surrounding structure perhaps which affected the light in some manner?—A. As far as decorative lamps in the Christmas tree outfit business is concerned, yes.

Q. Would you say that that meaning in the trade and commerce was different from the common meaning of the term?—A. I do not know what the dictionary meaning is, that is, I do not know the dictionary definition of the lamp because I have never really looked it up. I am giving you my understanding of what an incandescent lamp is in the electrical industry.

And in the course of his cross-examination the witness testified:

X Q. Now, you have taken Illustrative Exhibit A apart, haven't you?—A. Yes, sir.

X Q. And what do you call that part of it which comes out when you remove the fiber?—A. Electric bulb.

\* \* \* \* \* \*

X Q. Would you call that an incandescent lamp?—A. You could.

X Q. Would you?—A. I would.

X Q. And what do you call the part that is metal in solid glass?—A. That is a housing.

\* \* \* \* \* \* \*

X Q. So that in Illustrative Exhibit A we have an incandescent lamp and a housing?—A. Which makes it a fancy incandescent lamp.

The third witness, James W. Dorsey, is a buyer of electrical articles, hardware, and some house furnishings, for the McLellan Stores Co., with which he has been connected for about 23 years. He has purchased electrical equipment for the McLellan stores located in New England, in the South, Middle West, and Southwest; and is familiar with the wholesale electrical trade "mostly in New York City," and

to some extent in Chicago, St. Louis, and Pittsburgh. He stated, however, that he never bought merchandise similar to that represented herein by illustrative exhibit A "out of Chicago or St. Louis." Specifically he testified:

Q. Well, would you know whether or not there was a meaning to the term "incandescent electric light lamp" in the wholesale trade of the United States; would you know whether or not there was an understanding of that particular term? Just answer Yes or No, based on your experience.—A. Well, I am not sure about the wholesale. I mean as far as the buying end of it, I could answer to that.

Q. You have occasion to come in contact with the trade. Is there an understanding when you speak of incandescent electric light lamps, does that conjure up something in your mind?—A. I think of a Christmas tree lamp.

    \*       \*       \*       \*       \*       \*       \*

Q. Now, did you have that understanding in June of 1930?—A. I think so.

Q. All right. Will you tell us what that understanding was?—A. Well, decorative lamp for Christmas tree set.

Q. Can you describe a little further, a little more completely what they consist of?—A. Well, it would be a base and a bulb and a filament.

Q. And anything else, in your understanding?—A. Well, with the decoration of some kind, whether metal or paint.

On cross-examination the witness, having been shown the bulb portion of illustrative exhibit A marked herein as illustrative exhibit C, said he would call it an incandescent lamp. He stated, however, that he had never bought miniature incandescent lamps like that, but had handled flashlight bulbs which he considered incandescent lamps, some shaped like Santa Claus, ferns, animals, etc. He testified:

X Q. Are they all known in the trade as incandescent electric lamps?—A. Not generally, no, sir.

X Q. Not generally. How are they known?—A. Christmas tree lamps.

X Q. Christmas tree lamps?—A. Yes, sir.

X Q. And how is this Illustrative Exhibit A known in the trade?—A. As Christmas tree lamp.

After reading all the testimony here submitted, we are of the opinion that plaintiff failed to establish that the imported articles are commercially known as incandescent electric-light lamps. At best, the testimony merely discloses that when the witnesses heard the expression "incandescent electric-light lamp" they understood it to mean a Christmas tree lamp.

Our appellate court has from time to time judicially enunciated the proper method of proving commercial designation. In *United States* v. *Wilfred Schade & Co.*, 16 Ct. Cust. Appls. 366, T. D. 43092, the merchandise under consideration was invoiced as cod-liver oil-cake meal. It was classified as a nonenumerated manufactured article, and was claimed by the importer to be properly classified as "oil-cake meal." The evidence disclosed that it was sold in this country as cod-liver oil-cake meal and sometimes as cod-liver meal. In holding that the

proof failed to establish a commercial meaning for the merchandise different from its common and ordinary understanding, the court said:

It is obvious that there is no evidence in this record tending to prove that the commercial understanding of the term "oil cake" is different from its common meaning. Nor is there any evidence to the effect that, in the trade and commerce of the United States, the term "oil-cake meal" includes the merchandise in question. The only evidence offered in support of such contention is that the merchandise in question is bought and sold as "cod-liver oil-cake meal." This does not conform to the character of proof required. Without intending to give a comprehensive definition of the rule, it may be said, however, that, if an article is not within the common meaning of a tariff term, in order to bring it within that term by proof of commercial designation, where such proof is limited, as it is here, to the trade term by which the article is bought and sold, it must be shown by a preponderance of the evidence that it was bought and sold or known in the trade and commerce of the United States, uniformly, definitely, and generally by the term contained in the statute. *United States* v. *Walter*, 4 Ct. Cust. Appls. 95, T. D. 33371; *Seligmann* v. *United States*, 6 Ct. Cust. Appls. 85, T. D. 35336; *Hampton, Jr. & Co.* v. *United States*, 12 Ct. Cust. Appls. 490, 496, T. D. 40695.

If, however, an article is within the common meaning of a tariff term, that is, if it is a species embraced by the generic tariff term, the mere fact that it was not known in the trade by the precise tariff term would not affect its classification. *United States* v. *Motor Car Equipment Co.*, 3 Ct. Cust. Appls. 77, T. D. 32355; *Witcombe, McGeachin & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 84, T. D. 40022, and cases cited therein; *United States* v. *Lilly & Co.* and *Parke, Davis & Co.*, 14 Ct. Cust. Appls. 332, T. D. 41970.

Accordingly, as the merchandise is not within the common meaning of the term "oil-cake meal," proof that it was bought and sold in the trade as "cod-liver oil-cake meal" does not bring it within the statutory term. We must hold, therefore, that the merchandise is not free of duty as "oil-cake meal" under paragraph 1629.

The subject of commercial designation was again discussed in *Passaic Worsted Co. et al.* v. *United States*, 17 C. C. P. A. (Customs) 459, T. D. 43916. There the appellate court observed:

At the risk of unnecessary reiteration, we repeat a suggestion as to this kind of evidence frequently heretofore made by us. If, in the case at bar, it was sought to establish commercial designation of the imported machines as textile machinery, before attempting to do so it must be legally admitted that they have a commercial designation which differs from their common designation and that, under the common designation, they are not textile machinery. Otherwise, and if they are commonly known as textile machinery, no occasion for proof of commercial designation exists. Then, having admitted this necessary legal premise, the next inquiry must be: "By what name are these articles designated uniformly, generally, and definitely in the trade wherever they are bought and sold?" If, to such an inquiry, the witness can respond that they are so designated as textile machinery, the evidence is competent and tends to prove commercial designation. A very good and substantial reason exists for so directing the inquiry. If the witness is uncertain in his statement, such uncertainty will readily appear on cross-examination. If, on the other hand, the witness is asked whether a certain article belongs within a certain class, the answer he gives will simply be his opinion, and the true facts may not be readily available on cross-examination. The

rule of commercial designation is a wise one, but the rule is narrow and must be closely adhered to.

Again, in *Seligmann et al.* v. *United States*, 6 Ct. Cust. Appls. 85, T. D. 35336, it was held that—

\* \* \* Proof that the merchandise is commercially known as "sheet aluminum" is not proof that it is known as "aluminum in sheets," which would be necessary.

In the case at bar, far from establishing a uniform, definite, and general meaning in the trade and commerce of the United States on and prior to June 17, 1930, for the term incandescent electric-light lamps, the testimony of the witnesses, particularly on cross-examination, discloses that there was no such definite meaning. In fact, it shows that the articles in question were not known as incandescent electric-light lamps at all, but rather as kristal star lamps or as Christmas tree lamps. We therefore hold that no commercial designation has been proved herein for the term incandescent electric-light lamps. As above stated a similar failure of proof occurred in the former case of *New York Merchandise Co., Inc.* v. *United States, supra,* as to kristal star lamps identical in character with those here imported. In excluding such lamps from said paragraph 229, we observed that—

The construction of paragraph 229 has been the subject of numerous decisions of both this court and the appellate court. In the case of *B. B. T. Corp. of America* v. *United States*, 16 Ct. Cust. Appls. 144, T. D. 42780, there were involved certain aviation field floodlights. It was claimed that said lights were properly dutiable at the rate of 20 per centum ad valorem under paragraph 229 of the Tariff Act of 1922 as incandescent electric-light lamps or bulbs. After quoting numerous dictionary definitions, the court said:

From these definitions it fairly appears that an incandescent electric lamp ordinarily consists of a bulb, fitted with other parts, and the whole forming a lamp. The word is thus restricted in its meaning to the light-giving element and its immediate parts, and does not broaden out enough to embrace every item which goes toward holding the light-giving element in place or magnifying its power or directing its beams. The lamp is the source of the light; the other elements are accessory thereto. It will also be likewise observed that a complete electric lamp consists of several parts, of which one part is the bulb; the bulb, together with the other parts, which, the statute states, may be a "filament" or not, constitute a lamp.

In the case of *United States* v. *Milnor, Inc.*, 16 Ct. Cust. Appls. 472, T. D. 43212, there was involved the question of the dutiable classification of certain vase-shaped decorated glass lamps. It was claimed that said articles consisted of incandescent electric-light lamps under paragraph 229 of the Tariff Act of 1922. In that case the court said:

The record discloses that Exhibit No. 1 is sold and used as a lamp, and, after being fitted with the proper light element and having been connected with an electric current, is used as other lamps are used for illuminating purposes. \* \* \*

There was considerable testimony offered to the effect that Exhibit No. 1 is a lamp. Whether it is or is not a lamp, as we view the matter, is immaterial. The inquiry necessarily must be not whether it is a lamp, but whether it is an incandescent electric-light bulb or lamp, as provided for in said paragraph 229. Some slight effort was made to prove a commercial designation for the imported articles, but we cannot find in the record sufficient evidence to convince us that such commercial designation has been established. We are therefore relegated to the common understanding of the meaning of the terms used in the statute.

Paragraph 229 of the Tariff Act of 1922, of which the present paragraph 229 is virtually a literal reenactment, was invoked by the plaintiff in *O. O. Friedlaender (Inc.)* v. *United States,* 49 Treas. Dec. 704, T. D. 41505. The lamp there under consideration was thus described in the opinion of this court (then the Board of General Appraisers):

* * * It is composed of metal throughout, save for the insulated material covering the wire which passes through the article and a small piece of porcelain in the socket. It measures from base to top about 13 inches. The base, which is oval shaped, is 6½ inches long and about 4 inches at its widest point. According to the testimony of the single witness who appeared herein * * * the article "is made out of what they call white metal. It is a composition, a combination of lead, and I think they use some zinc in it. The socket is made out of porcelain and brass." It appears to have a bronze finish. The removable shade consists of a wire frame covered with "gold Jap silk" and lined on the inside with cotton batiste.

As disclosed in said opinion it was apparently the purpose of the plaintiff to establish "that such articles were uniformly, definitely, and generally known and recognized throughout the trade and commerce of the United States as 'lamps' on and prior to September 22, 1922." But the evidence offered was held to fall far short of accomplishing the desired result. The Government's case, however, was more meritorious. We quote further from the court's opinion:

The Government, on the other hand, called six trade witnesses whose testimony overwhelmingly proved (1) that the articles in question were not commercially known and dealt in as "lamps," and (2) that the term incandescent electric-light lamp had a definite, uniform, and general meaning throughout the trade and commerce of this country on and prior to September 22, 1922, which would exclude the article in question and which comprehended something entirely different therefrom. The Government witnesses were in complete agreement on the following definition found at page 33 of an official document entitled "Tariff Information Surveys on the Articles in Paragraph 167 of the Tariff Act of 1913 and Related Articles in other Paragraphs," as correctly covering the general trade understanding in the premises:

The commercial incandescent lamp consists essentially of a filament or wire, usually of either carbon or tungsten, inclosed in a glass bulb containing gas or exhausted to a vacuum. The filament is heated to a light-giving temperature by the passage of a current.

The above definition is immediately followed by this comment:

In 1914 production of incandescent lamps in the United States amounted to about 90,000,000 lamps, valued at $17,350,000. In 1920 there were about 211,000,000 lamps sold in this country, of which over 95 per cent were of the tungsten filament type. The value of the output in 1919, according to the census, was $57,647,000.

The oral testimony and the documentary proof herein in the form of trade catalogues, etc., as well as the official surveys and reports submitted by the United States Tariff Commission to the legislative committees which framed paragraph 229, leave no doubt in our minds as to the precise article which was intended to be covered by the provision for incandescent electric light lamps. The present article belongs to that large class of articles embraced within the term "electric light fixtures," which can in no sense be confused with the term

"incandescent electric light lamps." To concede that these articles are incandescent electric light lamps within the meaning of paragraph 229 would necessarily require a similar classification for chandeliers, electroliers, and every other fixture which holds an incandescent electric light lamp.

This case is governed in principle by our ruling in Abstract 49906 on so-called "miners' safety lamps." It was there found that, in addition to the incandescent electric bulb or lamp, the article consisted of a metal jacket which contained a storage battery, and metal framework, called a dome, which canopied the lamp and supported the jacket. Notwithstanding the merchandise was bought and sold as "miners' safety lamps," it was nevertheless held to be properly dutiable under the provision in paragraph 399 for manufactures of metal not specially provided for. That classification is equally applicable to the present merchandise.

On the established facts and the law applicable thereto, we are convinced that the so-called kristal star lamps now before us are not the incandescent electric-light lamps contemplated by paragraph 229 of the Tariff Act of 1930. At most, they are articles composed in part of incandescent electric-light lamps, the lamps being the light-giving element in the articles. They are decidedly something more than incandescent electric-light lamps. In this connection we cite the case of *United States* v. *Sutherland International Despatch et al.*, 21 C. C. P. A. (Customs) 264, T. D. 46790. There, the court was passing upon certain brass channels having felt linings on the inner surfaces. They were classified as articles or wares not specially provided for, composed wholly or in chief value of metal, and were claimed to be dutiable under an *eo nomine* provision for "brass angles and channels." In the course of its opinion the court said:

In the case at bar * * * it may be said that although the major part of the article here involved, in its first estate, was a brass channel, it nevertheless became something more than that when it was subsequently lined with felt.

* * * * * * *

* * * Exhibit 1 shows the articles to be something more than brass channels. The brass channel forming a part of said article has been subjected to a manufacturing process. The testimony shows that the articles have been dedicated to a single use, and have no other use than in rectangular windows of marine craft, a use disclosed by the record to be different from the use to which brass channels without a further manufacturing process are put.

Similarly in the instant case, we have an article, part of which in its first estate was a complete incandescent electric-light lamp of the kind contemplated by said paragraph 229, but which became something more when it was encased in a metal housing. When so combined, the two units became a new and different article, namely, a so-called kristal star lamp, the single use of which is as a Christmas tree decoration. When so merged and incorporated, the incandescent electric-light lamp lost its tariff identity as such. In other words, it ceased to exist as a separate and distinct dutiable entity. Obviously, then, it may not be said that the new article, the kristal star lamp, is

within the purview of paragraph 229, *supra*, merely because it is composed in part of an incandescent electric-light lamp, and we so hold. On this particular point, our view of the law seems to be in harmony with that expressed in *New York Merchandise Co., Inc.* v. *United States, supra,* wherein the involved merchandise was kristal star lamps of precisely the same character as those now before us.

This brings us to another phase of the case. In its present protest, the plaintiff makes a claim which was not alleged in the case just cited. It is here contended, alternatively, that these kristal star lamps are parts of Christmas tree sets, and as such are properly dutiable at the rate of 35 per centum ad valorem under paragraph. 353, *supra,* as parts of articles having as an essential feature an electrical element or device, such as signs, a claim which we regard as well founded.

In the case of *W. X. Huber Co.* v. *United States*, 8 Cust. Ct. 157, C. D. 595, we had before us the question of the tariff classification of Christmas tree sets, equipped with an incandescent electric-light bulb or lamp for each outlet in the set. The collector had treated the sets as entireties and levied duty thereon at the rate of 35 per centum ad valorem under paragraph 353, *supra,* as articles having as an essential feature an electrical element or device. The bulbs so affixed to the sets were claimed to be separate dutiable entities and as such *eo nomine* provided for at the rate of 20 per centum ad valorem under said paragraph 229 as incandescent electric-light bulbs or lamps. In that case we said:

It appears that similar merchandise to that here involved was before this court in the case of the *German American Import Co.* v. *United States*, T. D. 46488, 63 Treas. Dec. 1130. There, certain Christmas-tree lighting sets composed in chief value of metal, each set operating as a unit and consisting of 16 incandescent lamps, each installed in its separate socket, the whole being connected with the necessary wiring or cord, at the end of which was a plug for connecting the set with the electric current, were assessed with duty at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It was claimed that said articles were properly dutiable at the rate of 20 per centum ad valorem under paragraph 229 as incandescent electric-light bulbs and lamps with metal filaments; or, alternatively, at the rate of 35 per centum ad valorem under paragraph 353 as electrical articles. We there held that the sets were something more than electric-light lamps or bulbs within the meaning of said paragraph 229, and sustained the claim alleged under paragraph 353.

Further, we pointed out that—

In order to have sustained the claim that these bulbs are separate entities and as such dutiable under said paragraph 229, it was incumbent upon the plaintiff to show that the bulbs had not lost their identity as such when they were incorporated in and became part of the lighting sets, and that they were not integral and essential parts of such sets without which the latter would be incapable of performing the function for which the set was made. This proof the plaintiff has failed to introduce herein.

At the close of the hearing in this case there occurred the following colloquy:

Mr. DAVIDSON. I want to be sure that we have the record clear that Illustrative Exhibit B is illustrative of just that series set with which Exhibit A is used and that without that type of set Illustrative Exhibit A has no particular function.

Judge LAWRENCE. And that is not disputed?

Mr. FITZGIBBON. That is not disputed, that is correct.

In the instant case, therefore, we are satisfied that it is fairly established that the imported kristal star lamps are integral and constituent parts without which the Christmas tree lighting sets could not function for the purpose for which they were designed.

As to whether Christmas tree lighting sets are articles having as an essential feature an electrical element or device within the meaning of said paragraph 353, we believe our decision in *New York Merchandise Co., Inc.* v. *United States*, 8 Cust. Ct. 209, C. D. 607, requires an affirmative holding. After citing the decision of our appellate court in *United States* v. *M. Minami & Co., Inc.*, 29 C. C. P. A. (Customs) 169, C. A. D. 188, which held Christmas wreaths to be classifiable as such electrical articles, we said in the *New York Merchandise* case last above mentioned:

* * * we are of the opinion that Christmas-tree lighting sets are articles having as an essential feature an electrical element or device such as signs, as were the Christmas wreaths in the last-cited case. It is a well-known fact that Christmas-tree lighting sets are not used like ordinary fixtures or lamps for illuminating the house, but are solely employed during the Christmas season to decorate Christmas trees both indoors and outdoors. They are more or less symbolical in character of the Christmas season and perform precisely the same function as did the Christmas wreaths involved in the last above-cited case.

Accordingly, upon the authority of *United States* v. *N. Minami & Co., Inc., supra*, and *New York Merchandise Co., Inc.* v. *United States*, 8 Cust. Ct. 209, C. D. 607, we hold the imported kristal star lamps to be properly dutiable at the rate of 35 per centum ad valorem under said paragraph 353 of the Tariff Act of 1930 as parts of articles having as an essential feature an electrical element or device, such as signs, as alternatively claimed by the plaintiff herein. That claim is therefore sustained; all others are overruled.

Judgment will be entered accordingly.