DAVIES, TURNER & COMPANY,
Plaintiff,

v.

UNITED STATES, Defendant.
C.D. 2979; Protest Nos. 62/9813–91838,
62/9814–91877, and 62/12934–92047.

United States Customs Court,
Second Division.
April 24, 1967.

Allerton deC. Tompkins, New York City, for plaintiff.

Barefoot Sanders, Asst. Atty. Gen. (Charles P. Deem, New York City, trial attorney), for defendant.

Before RAO and FORD, Judges.

RAO, Chief Judge:

The court is here called upon to determine the proper tariff classification for customs duty purposes of certain merchandise covered by the three protests enumerated above, which protests have been consolidated for purposes of trial.

The merchandise involved is described on the commercial invoices accompanying the entries as "Plastic HO Gas Street Lamps (Set of 3 pcs.)." Upon importation at the port of Philadelphia, the customs officials classified the controverted merchandise as articles or wares, not specially provided for, composed wholly

or in chief value of steel, in paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108, by virtue of the similitude provisions of paragraph 1559(a) of said act, as amended by the Customs Simplification Act of 1954, 89 Treas.Dec. 242, T.D. 53599, and assessed duty thereon at the rate of 19 per centum ad valorem.

The alternative claims relied upon by plaintiff are contained in protests timely filed or in amendments thereto and seek classification of the articles in issue either as incandescent electric-light lamps with metal filaments in paragraph 229 of said tariff act, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, 90 Treas.Dec. 234, T.D. 53865, supplemented by Presidential notification, 90 Treas. Dec. 280, T.D. 53877, dutiable at 10 per centum ad valorem, or by virtue of the similitude provisions of paragraph 1559 (a), supra, as articles having as an essential feature an electrical element or device in paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas.Dec. 121, T.D. 52739, which provides for duty at the rate of 13¾ per centum ad valorem.

The statutory provisions above referred to are set forth in detail for ready reference.

Paragraph 397 of the Tariff Act of 1930, as modified by the sixth protocol, supra:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \*

Not wholly or in chief value of tin or tin plate:

Carriages, drays, \* \* \* and illuminating articles.

\* \* \* \* \* \*

Other, composed wholly or in chief value of iron, steel \* \* \*.      19% ad val.

Paragraph 229 of said act, as modified by the Japanese protocol and later supplemented, supra:

Incandescent electric-light bulbs and lamps:

Without filaments or with metal filaments . . .    10% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay protocol, supra:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \*

Calculating machines   \* \* \*

\* \* \* \* \* \*

Other \* \* \* . . . . . . 13¾% ad val.

Paragraph 1559(a) of said act, as amended by the Customs Simplification Act of 1954, supra:

Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

A sample of the merchandise in litigation consisting of three plastic HO gas street lamps, in a cardboard box,

were received in evidence as plaintiff's exhibit 1.

Nikolaus Pfusterschmid, who appeared on behalf of plaintiff, was the only witness called to testify. He stated he is general manager of Associated Hobby Manufacturers, Inc., which imports hobby items and sells them throughout North and South America. He stated that he has sold articles like exhibit 1 throughout the United States and has personally seen such articles being used in various parts of this country as accessories on HO railroad layouts. By "HO" is meant the scale of 1 to 87 to the prototype article, said prototype in this instance being a street lamp as it is seen in the cities of this country. The imported articles light up as do street lamps.

Received in evidence as plaintiff's exhibit 2 were samples of the HO gas street lamp in a knocked-down condition to show the different components. On being asked to explain to the court how the articles represented by exhibit 1 operate, the witness stated that the two wires extending from the lamppost and permanently attached at the other end to a "grain of wheat" bulb containing a metal filament are connected to a battery or a transformer causing the bulb portion to light. The street lamp does not contain a switch of any kind.

The only use for the imported articles, according to witness Pfusterschmid, is in HO layouts reproducing railroad station or street scenes. To serve this purpose, the HO gas street lamps have been made to look like the actual article in form and shape in order to add realism to HO layouts. He has seen them so used both with the bulb lit and with it unlit. When lit, the light created thereby casts a shadow on the surrounding area when interrupted by nearby objects.

Upon completion of plaintiff's case, the Government made Nikolaus Pfusterschmid its own witness. On being shown an article similar in shape and use to the street lamps at bar, he identified the base portion of said item as being composed of base metal. Thereupon said article was received in evidence as defendant's exhibit A.

As shown by the record in this case, the article in controversy known as an HO gas street lamp is a composite article, measuring about 2⅜ inches in overall height, consisting of a "grain of wheat" bulb with metal filament to which bulb two wires are permanently attached, a gas lamppost, and a lantern-shaped cover for the bulb. It is not until these various parts are combined that you have an HO gas street lamp. The wires referred to, which project from the base of the lamppost, are to be attached either to a battery or to a transformer to cause the bulb to light.

The first consideration is whether the composite article comes within the purview of the provision for incandescent electric-light lamps in paragraph 229 of the Tariff Act of 1930, as modified, supra. The statutory provision in question has been the subject of judicial construction, the leading case being B. B. T. Corp. of America v. United States, 16 Ct.Cust.Appls. 144, T.D. 42780. The court held in that case that aviation field flood lights were not within the provision for incandescent electric-light lamps in paragraph 229 of the Tariff Act of 1922 and, in the course of its decision, after referring ot several lexicographic authorities, expressed itself as follows on the statutory provision involved:

From these definitions it fairly appears that an incandescent electric lamp ordinarily consists of a bulb, fitted with other parts, and the whole forming a lamp. The word is thus restricted in its meaning to the light-giving element and its immediate parts, and does not broaden out enough to embrace every item which goes toward holding the light-giving element in place or magnifying its power or directing its beams. The lamp is the source of the light; the other elements are accessory thereto. It will also be likewise observed that a complete electric lamp consists of several parts, of which one part is the bulb; the bulb, together with the other parts,

which, the statute states, may be a "filament" or not, constitute a lamp.

That view has been adhered to and followed in the application of the identical provision in paragraph 229 of the Tariff Act of 1930 in numerous cases including the following: New York Merchandise Co., Inc. v. United States, 16 Cust.Ct. 148, C.D. 1003, involving so-called "kristal star lamps," parts of Christmas-tree lighting sets; W. X. Huber Co. v. United States, 8 Cust.Ct. 157, C.D. 595, covering incandescent electric-light bulbs with metal filaments forming integral and indispensable parts of Christmas-tree lighting sets; and Alex Taylor & Co., Inc. v. United States, 67 Treas.Dec. 386, T.D. 47566, pertaining to so-called "pygmy" or pocket flashlights containing incandescent electric-light bulbs. In each of the cases above referred to, the articles there in controversy were held to be *more than* incandescent electric-light lamps and not within the provisions of paragraph 229 of the tariff act.

In the light of the foregoing cases, we are led to a similar conclusion in the instant case where the evidence before us discloses that the HO gas street lamps in issue, although they may be said to contain an incandescent electric-light bulb as a part thereof, in their status as imported are more than incandescent electric lamps as in the *New York Merchandise, Huber* and *Alex Taylor* cases, supra. Accordingly, plaintiff's claim for classification of the imported articles within the purview of paragraph 229 of the Tariff Act of 1930, as modified, supra, must be overruled.

As mentioned, supra, plaintiff claims in the alternative that the imported merchandise consists of articles having as an essential feature an electrical element or device within the purview of paragraph 353 of said tariff act, as modified by the Torquay protocol, supra. Even assuming, *arguendo*, that the "grain of wheat" bulb with metal filament may be said to be the principal or prime characteristic of the HO gas street lamp so as to constitute it an essential electrical feature of the article with which it is used, consideration must be given to whether such an article comes within the purview of said paragraph 353.

Plaintiff seeks to support such a position by analogy to the case of United States v. N. Minami & Co., Inc., 29 CCPA 169, C.A.D. 188, wherein illuminated Christmas wreaths were held to be articles having as an essential feature an electrical element or device such as electric signs within the purview of paragraph 353 of the Tariff Act of 1930, and cases of like holding which followed the *Minami* case. In New York Merchandise Co., Inc. v. United States, 8 Cust.Ct. 209, C.D. 607, involving brass shells which were integral and essential parts of so-called Christmas-tree lighting sets, after citing the decision of the appellate court in the *Minami* case, supra, the court stated:

> * * * we are of the opinion that Christmas-tree lighting sets are articles having as an essential feature an electrical element or device such as signs, as we were the Christmas wreaths in the last-cited case. It is a well-known fact that Christmas-tree lighting sets are not used like ordinary fixtures or lamps for illuminating the house, but are solely employed during the Christmas season to decorate Christmas trees both indoors and outdoors. They are more or less symbolical in character of the Christmas season and perform precisely the same function as did the Christmas wreaths involved in the last above-cited case.

On the basis that the imported gas street lamps are decorative accessories with HO layouts, plaintiff contends that, like the Christmas wreaths and Christmas-tree lighting sets, which also serve a decorative function, the HO gas street lamps should be classified as articles having as an essential feature an electrical element or device in paragraph 353.

The court is of opinion, however, that the articles in controversy are clearly distinguishable from the Christmas wreaths and Christmas-tree lighting sets in the *Minami* and *New York Merchan-*

*dise* cases, supra. In the first place, it has not been shown in what way the HO gas street lamps are *ejusdem generis* with the exemplar articles in said paragraph 353. Moreover it is the view of the court that the HO gas street lamps at bar do not serve a decorative function but a realistic one. The evidence discloses that the HO gas street lamps are manufactured to precise scale of 1 to 87 to represent their actual prototype and are used with other articles manufactured to like scale to construct replicas, in miniature, of street scenes and railroad layouts.

It is worthy of note that the appellate court in the case of United States v. Polk's Model Craft Hobbies, Inc., Lansen-Naeve Corp., et al., 47 CCPA 137, C.A.D. 746, affirmed the trial court in holding that HO equipment manufactured to rigid standards, used by adults as members of model railroad clubs or as hobbyists interested in model railroad building or by grownup children or youths for their amusement, did not comprise toys for customs duty purposes.

The prototype of which the imported article is a scale reproduction is a street lamp which, according to the defendant, is subject to classification in paragraph 397 of the Tariff Act of 1930, as modified, since by congressional intent illuminating and lighting fixtures are to be so classified. In this regard, certain language contained in the case of Biddle Purchasing Co. v. United States, 50 CCPA 71, C.A.D. 823, is in point. In that case, the appellate court upheld the trial court in sustaining the classification for duty purposes of common two-cell flashlights as electrical articles in paragraph 353 of the Tariff Act of 1930, as modified, rather than as articles or wares, not specially provided for, in chief value of iron or steel, in paragraph 397 of said act, as modified. The question was raised in that case whether flashlights were such illuminating articles or lamps as Congress intended to be included in paragraph 397. On this point, the court stated as follows:

The testimony taken at the hearings concerning proposed paragraph 387 of H.R. 2667 before the House Committee on Ways and Means [70th Cong., 2d Sess., Sch. 3, pp. 2617–2632] and the Senate Committee on Finance [71st Cong., 1st Sess., Sch. 3, pp. 1045–1073] indicates that the legislators and witnesses were concerned with cast iron and brass chandeliers, wall brackets, street lights, and residential lighting fixtures, etc. Nowhere in these hearings is there any indication that Congress was concerned with flashlights or articles similar to them. Such testimony indicates to us that the term "lamps", as used in proposed paragraph 387, was intended to cover articles *ejusdem generis* with illuminating and lighting fixtures. [Italics supplied.]

The small size and limited degree of illumination provided by the HO gas street lamps in issue are not deterrents to holding that said lamps are *ejusdem generis* with illuminating and lighting fixtures intended to be encompassed by paragraph 397 for reasons so succinctly stated in defendant's brief that we here quote therefrom with approval as follows:

It is a matter of common knowledge that illuminating and lighting fixtures and lamps are produced in many different sizes and themselves produce widely varying degrees of illumination. Both the size and the amount of illumination provided results from the contemplated end use. For instance, compare the well-known floor-to-ceiling pole lamps with the several common types of tiny "nite lights." The mere fact that a lamp is relatively small and provides a relatively small degree of illumination does not warrant a determination that it is not such a lamp as is *ejusdem generis* with illuminating and lighting fixtures. It is apparent from the instant record that the small size and degree of illumination of HO lamps are dictated by their use with other HO scale items.

Just as a standard size street light serves to illuminate a street, an HO size street light serves to illuminate an HO size street. Proportional identity in physical appearance, function and effect is obviously of paramount importance in creating the desired realism in HO layouts. HO street lamps light up (R. 6, 8, 11); and the light produced is sufficient to cast shadows at night, and even in the daytime. (R. 12, 13). It seems apparent that no meaningful distinction can be drawn between the instant HO lamps which, to suit their particular end use, are small and give little illumination, and other lamps such as table lamps, pole lamps and street lamps which are larger and provide greater amounts of illumination in accord with their end use.

█ Inasmuch as it is by congressional intent that illuminating and lighting fixtures are included within the scope of paragraph 397 of the Tariff Act of 1930, and inasmuch as it appears from the judicial construction given to such provision in the *Biddle Purchasing* case, supra, that street lights are encompassed by that term, and in view of the fact that it has been shown by the record herein that the HO gas street lamps in issue are *ejusdem generis* with such articles, it follows, therefore, that the HO gas street lamps at bar come within the provisions of paragraph 397 of the Tariff Act of 1930, as modified.

Predicated on the foregoing considerations and after a review of all cases cited by the parties in their briefs, the court holds that the subject merchandise was properly classified by the customs officials by virtue of the similitude provision in paragraph 1559(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, supra, and that all claims in the protests are overruled.

Judgment will issue accordingly.

FORD, J., concurs.